FILED
MAR 04 2011

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ENRIQUE R. BAUTISTA, | ) |
| | ) Civil No. 08-546-PK |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) FINDINGS AND RECOMMENDATION |
| MARK NOOTH, | ) |
| | ) |
| Respondent. | ) |

Adam S. Arms
McKanna Bishop Joffe & Arms LLP
1635 NW Johnson St.
Portland, Oregon  97209

   Attorney for Petitioner

John R. Kroger
Attorney General
Jonathan W. Diehl
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301

   Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION

PAPAK, Magistrate Judge.

Petitioner Enrique R. Bautista brings this habeas corpus action pursuant to 28 U.S.C. § 2254 and challenges his assault convictions. For the reasons set forth below, the Petition for Writ of Habeas Corpus (#1) should be denied, and Judgment should be entered dismissing this action with prejudice.

## BACKGROUND

On July 11, 2002, the Marion County Grand Jury returned an indictment charging Bautista with one count of Assault in the First Degree and three counts of Assault in the Second Degree. Respondent's Exhibit 102. The indictment was later amended and the Assault in the First Degree charge was reduced to the lesser included charge of Assault in the Second Degree. Respondent's Exhibit 103, pp. 6-7. A jury found Bautista guilty on all counts and the court imposed a sentence totaling 280 months. Respondent's Exhibit 101.

Bautista directly appealed his conviction and sentence, but the Oregon Court of Appeals affirmed the trial court without a written opinion. State v. Bautista, 197 Or. App. 494, 108 P.3d 118 (2005); Respondent's Exhibits 107-108. Bautista did not file a petition for review with the Oregon Supreme Court.

Bautista next filed for post-conviction relief ("PCR") in state court. The PCR trial court denied relief. Bautista v. Hill, Malheur County Circuit Court Case No. 05-12-4845M. On appeal, the

2 - FINDINGS AND RECOMMENDATION

Oregon Court of Appeals affirmed the PCR trial court, and the Oregon Supreme Court denied review. 2007 Or. LEXIS 1288; Respondent's Exhibits 126-131.

Bautista filed a subsequent petition for post-conviction, but the court denied relief. Bautista v. Nooth, Malheur County Circuit Court Case No. 07-10-6177P. On appeal, the Oregon Court of Appeals affirmed the PCR trial court without a written opinion, and the Oregon Supreme Court denied review. Bautista v. Nooth, 232 Or. App. 285, 222 P.3d 53 (2009), rev. denied 347 Or. 718, 226 P.3d 709 (2010); Respondent's Exhibits 138-143.

On May 5, 2008, Bautista filed this action. His grounds for relief as set forth in his Petition are as follows:

1.  Ground One: Trial counsel failed to subpoena Erica Leon as [a] trial witness.

    Supporting Facts: Erica Leon would have testified that petitioner was at the scene of the crime alleged in Count One to give her a tattoo not to assault the alleged victim.

2.  Ground Two: Trial counsel failed to subpoena witness Eugenio Zopiyatle Santos.

    Supporting Facts: Mr. Zopiyatle would have testified that petitioner acted in self defense in the incident in alleged Count One which would have proved that alleged victim lied on the stand.

3.  Ground Three: Trial counsel failed to proffer exculpatory witness Jose Leon Chavez to demonstrate that petitioner did not participate in stabbings.

    Supporting Facts: Amended Formal Post Conviction. Counsel fail[ed] to cross examine Leon Chavez as a witness to testify that he alone was responsible for the assaults prejudiced the jury's verdict.

3 - FINDINGS AND RECOMMENDATION

4.    Ground Four: Trial counsel failed to have laboratory test on bat allegedly used in Count One.

      Supporting Facts: The test would have proved that the bat was not the actual weapon. Having the bat presented to the jury as evidence prejudiced the verdict in my case.

5.    Ground Five: Trial counsel failed to subpoena the daughter of Julia Morales (Fransisca Gonzales).

      Supporting Facts: Fransisca Gonzales would have testified that she saw petitioner hit golf balls with his bat and thus explain the existence of dents in the bat.

6.    Ground Six: Trial counsel failed to subpoena as trial witnesses the victims alleged in Counts 2, 3, and 4.

      Supporting Facts: Each witness would have testified that petitioner was innocent of their respective counts in the indictment. Victims admitted to detectives that they could not identify the alleged aggressor or weapon.

7.    Ground Seven: Trial counsel failed to subpoena trial witness Jorge Escalona.

      Supporting Facts: Jorge Escalona would have testified that each alleged victim in Counts 2,3, and 4 stated they started the fight that resulted in their being stabbed. Escalona was in county jail around the time petitioner was getting ready for trial.

8.    Ground Eight: Trial counsel failed to motion the court for separate trials for the incident on June 25, 2002 and the incident on July 1, 2002.

      Supporting Facts: By failing to motion the court for separate trials petitioner was prejudiced because having evidence witnesses and circumstances presented for one case damages the other case and vice versa.

9.    Ground Nine: Trial counsel failed to give an opening statement.

      Supporting Facts: Failure to give opening statement prejudiced petitioner by not giving the jury an opportunity to see the evidence from the defense's stand point from the beginning.

4 - FINDINGS AND RECOMMENDATION

10. Ground Ten: Trial counsel failed to object to the Deputy District Attorney's leading of witness Erika Salazar and Irene Perez.

    Supporting Facts: Counsel's failure to object to the leading contributed to petitioner being prejudiced during trial when DDA "put words" in witnesses' mouths altering their testimony to state's benefit.

11. Ground Eleven: Trial attorney failed to object to Deputy District Attorney's prejudicial statements concerning petitioner.

    Supporting Facts: Petitioner was prejudiced when Deputy District Attorney used damaging remarks about petitioner during trial (opening and closing arguments) which affected jury's verdict.

12. Ground Twelve: Trial counsel failed to offer as evidence the gun used by the alleged victim Raul Alvarado Mendoza in the 6-25-2002 incident.

    Supporting Facts: Petitioner was prejudiced when counsel failed to offer the gun as evidence to help prove petitioner's theory of self-defense and to show the kind of pressure petitioner was under which justified self defense.

13. Ground Thirteen: Trial counsel failed to prepare petitioner for his testimony.

    Supporting Facts: Trial counsel gave "yes and no" motions with her head directed toward petitioner during his testimony thus gave the jury the impression that counsel was supplying the answer to petitioner when he testified.

14. Ground Fourteen: Trial counsel failed to object to questioning of witness Erika Salazar concerning petitioner's incarceration.

    Supporting Facts: DDA asked Erika Salazar questions regarding petitioner's incarceration w[h]ich answers provided the jury with the impression that petitioner was already "guilty" of the case which he was being in trial for which prejudiced the jury verdict.

5 - FINDINGS AND RECOMMENDATION

> 15. Ground Fifteen: The judge failed to grant motion for mistrial when a third person unrelated to the case made a damaging comment to jurors in petitioner's trial.
>
> Supporting Facts: The comment was "just find him guilty so you can go home" and it prejudiced the jury verdict.

Respondent asks the court to deny relief on the Petition because: (1) none of his claims allege violations of the United States Constitution or of federal law; (2) Grounds One, Two and Four through Fifteen are procedurally defaulted, and the default is not excused; and (3) Ground Three was correctly denied on the merits in a state-court decision entitled to deference.

## DISCUSSION

### I. Unargued Claims

Bautista fails to brief the merits of Grounds One, Two and Four through Fifteen in his counseled supporting memorandum. The State contends none of these claims was fairly presented to the Oregon Supreme Court and that they are procedurally defaulted. Bautista concedes as much, but "suggests that highlighting these issues will provide the court with context in which to consider the non-defaulted ineffective assistance of counsel claim discussed in detail." Memorandum in Support (#34), p. 8.

On federal habeas review, Bautista must show that the state court determination denying his claims was contrary to or an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d). The court's review of the record reveals that these claims were never presented to the Oregon courts in a

6 - FINDINGS AND RECOMMENDATION

procedural context in which their merit would be considered, and thus, they are procedurally defaulted. Accordingly, by not advancing Grounds One, Two and Four through Fifteen in his memorandum, Bautista has failed to meet the burden of proof for habeas relief under § 2254(d) and relief on these claims must be denied.

## II. Merits

### A. Standard of Review

An application for writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct and Bautista bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that]

precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. Id. at 410. The state court's application of clearly established law must be objectively unreasonable. Id. at 409.

B. Analysis

### Ineffective Assistance where Counsel Failed to Cross-Examine Bautista's Co-Defendant Jose Leon Chavez (Ground Three)

The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel. First, the petitioner must show that his lawyer's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 686-687 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." Id at 689.

Second, the petitioner must show that his lawyer's performance prejudiced the defense. The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id at 694.

8 - FINDINGS AND RECOMMENDATION

A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. <u>Id</u> at 696.

During his PCR proceedings, Bautista submitted the following affidavit from his co-defendant, Jose Leon Chavez, and argued his trial counsel rendered ineffective assistance when she failed to elicit this testimony from Chavez at trial:

> I, Jose Leon Chavez, being duly sworn on oath, do hereby depose and say the following: I will tell you what happened involving Enrique Bautista. He didn't have anything to do with the stabbings. The reason I said he did do it was because when I was arrested the police had said that Enrique already said what I did. So, I was mad. So, I told myself I'm gonna take him down with me. But, once I got my hands on the police reports, I noticed that he didn't say anything. I don't remember how I stabbed them because I was drunk. But, I do remember holding the knife. I thought about doing this because it didn't feel right having him do time that he shouldn't be doing. I should be doing it myself. Plus he needs to be out with his daughter. These years that have passed, he could have been with her, but because of my mistakes, I took him away from her and I'm truly sorry.

Respondent's Exhibit 117.

The PCR trial court made the following pertinent findings relating to Chavez's affidavit:

> Every time you get an affidavit in a case like this you worry about it. Oh no he didn't do it I did it, the problem with that is that many times people with nothing to lose will submit affidavits saying hey I did it he didn't do it he didn't have anything to do with it, most of the time these people who are serving long terms in jail I don't know here. The fact of the matter is it happened what over 2 years these affidavits came almost 2 years after the trial and they are direct conflict with what was testified by this witness at trial. I don't believe them.

Respondent's Exhibit 124, p. 29.

9 - FINDINGS AND RECOMMENDATION

Bautista contends the PCR court's denial of his claim of ineffective assistance of counsel for failing to cross-examine Chavez, was based on an unreasonable determination of the facts in light of the evidence presented during the post-conviction trial, and thus, is entitled to no deference by this court. Specifically, he argues that the PCR court's determination that Chavez's affidavit was not credible was unreasonable because: (1) the judge did not know how much time Chavez was serving and assumed anyone serving a long sentence had nothing to lose and would not give credible testimony; and (2) it was based on the PCR court's mistaken finding that Chavez's affidavit was in direct conflict with his in-court trial testimony. Memorandum in Support (#34), p. 7. The court disagrees.

First, Bautista cannot meet his burden of showing by clear and convincing evidence that the PCR court's general reservations concerning affidavits by inmates serving long sentences and claiming sole responsibility for a crime for which a fellow inmate was convicted are unreasonable. To the contrary, it is perfectly reasonable for the PCR court to consider such affidavits, particularly those submitted years after trial, with a degree skepticism.

Similarly, Bautista cannot show by clear and convincing evidence that the PCR court's finding that Chavez's affidavit was in direct conflict with his in-court testimony was an unreasonable finding based on the evidence presented during the PCR proceedings.

10 - FINDINGS AND RECOMMENDATION

At trial, Chavez testified that he and Bautista were members of the same gang and that they were present at both incidents. He further testified that even though he acted in self-defense (with the exception of the stabbing of one victim), he pled guilty to the additional counts of assault because he was scared of getting more time. Respondent's Exhibit 104, Transcript of Proceedings, Volume II, pp. 252-56. In contrast, in his affidavit, Chavez states that he remembers holding a knife but does not know how he came to stab the victims because he was drunk. Despite this representation of intoxication, he is clear Bautista had nothing to do with the stabbings. While the State did not specifically question Chavez at trial about his level of sobriety during the incidents or Bautista's role in them, it is not unreasonable to conclude that his failure to mention either, particularly the fact that a fellow gang member had nothing to do with the stabbings, constitutes, if only by omission, a direct conflict with the statement in his affidavit.

With regard to prejudice, the relevant inquiry is whether Bautista can show that there is a reasonable probability that, but for trial counsel's failure to cross-examine Chavez, the result of the proceeding would have been different. Bautista contends the outcome of his case would have been different because Chavez's testimony on cross-examination at trial would "likely" have mirrored the content of his affidavit submitted more than two years later during Bautista's PCR proceedings. The court is unconvinced.

11 - FINDINGS AND RECOMMENDATION

Chavez's affidavit does not indicate he was over his determination to "take [Bautista] down with [him]" at the time of trial. Rather, it suggests Chavez came to the conclusion that Bautista should be out with his daughter and not be doing time for something Chavez was responsible for after some reflection. In addition, Bautista asserts that Chavez's trial testimony reveals that he "was clearly not interested in implicating [him]." Memorandum in Support (#34), pp. 5-6. Based on the court's review of the record, it agrees this is a fair assessment of Chavez's testimony. Contrary to Bautista's suggestion, however, it is equally fair to conclude from the record that Chavez was not interested in *exonerating* Bautista either. Finally, Bautista's arguments related to both the credibility of Chavez's affidavit and prejudice to his case based on trial counsel's failure to cross-examine Chavez are significantly undermined by the eye witness testimony at trial of Erika Salazar and Irene Perez wherein they testified that they saw Bautista stab at least one victim. Respondent's Exhibit 104, Transcript of Proceedings, Volume II, pp. 166 & 208-09.

Therefore, for the reasons set forth above, Bautista cannot demonstrate that the PCR court's denial of his Ground Three ineffective assistance of counsel claim was either contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court or that it was based on an

unreasonable determination of the facts in light of the evidence presented in State court proceedings.

C. **Evidentiary Hearing**

Petitioner contends that the court should grant him an evidentiary hearing "to fully examine Leon-Chavez's credibility and the potential testimony that effective cross-examination would have elicited." Memorandum in Support (#34), p. 10.

Petitioner is not entitled to an evidentiary hearing in this federal court to further develop the merits of his claim unless he diligently attempted to develop the evidence in state court, but was unable to do so. Williams v. Taylor, 529 U.S. 420, 433-38 (2000). If petitioner failed to diligently develop the evidence, an evidentiary hearing is permitted only if petitioner's claim relies on: 1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or 2) a factual predicate that could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(I) and (ii). In addition, the facts underlying the claim must be sufficient to establish by clear and convincing evidence, that no reasonable fact finder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B).

Petitioner's request for an evidentiary hearing is denied. He makes no offer of proof as to the evidence he would seek to

13 - FINDINGS AND RECOMMENDATION

present in an evidentiary hearing or the reasons why he did not present such evidence during his state court proceedings. Moreover, to the extent petitioner seeks to present evidence bearing on the credibility of Chavez's affidavit or on how Chavez would have testified on cross-examination, his request for an evidentiary hearing is denied on the basis that he cannot show that he diligently attempted to develop this evidence in state court or that it would be sufficient to establish by clear and convincing evidence, that no reasonable fact finder would have found him guilty on all four counts of Assault in the Second Degree.

## RECOMMENDATION

Based on the foregoing, the Petition for Writ of Habeas Corpus (#1) should be DENIED, and judgment should enter DISMISSING this case with prejudice.

## SCHEDULING ORDER

The Findings and Recommendations will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

14 - FINDINGS AND RECOMMENDATION

NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

In addition, the district judge should certify that Bautista has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2). This case is not appropriate for appellate review.

DATED this 4th day of March, 2011.

_____
Paul Papak
United States Magistrate Judge

15 - FINDINGS AND RECOMMENDATION